### COLLIGNON and others v. HAYES.

*Circuit Court, N. D. New York.  May 7, 1881.*

1. LETTERS PATENT—FOLDING CHAIRS—INFRINGEMENT.

   Letters patent No. 96,778, for an improvement in folding chairs, granted November 16, 1869, to Claudius O. and Nicholas Collignon, are infringed, as to claim 1, by chairs made under and in accordance with letters patent No. 221,-062, granted to the defendant, October 28, 1879.

2. INFRINGEMENT—FORMAL CHANGES.

   Where the same result is effected by corresponding parts and by an identity in the mode of operation, mere formal changes will not avoid infringement.

3. PRELIMINARY INJUNCTION—DELAY.

   Where the patentee gave prompt notice to an infringer to cease infringing, and, in the period of two years intervening between the time when the fact of the infringement first became known to him and the date of the commencement of legal proceedings, repeated the notice three times, and where, during this time, the business engagements of the patentee were many and pressing, and no affirmative encouragement was ever given by him to the infringer, *held*, that the right to a preliminary injunction, in a case otherwise plain, will not be affected by the delay.

*Blair, Snow & Rudd,* for plaintiff.

*R. H. Duell,* for defendant.

BLATCHFORD, C. J.  This is a motion for a preliminary injunction, founded on letters patent No. 96,778, granted November 16, 1869, (erroneously stated in the bill as October 16, 1879,) to Nicholas Collignon and Claudius O. Collignon, for an "improvement in folding chairs." The specification says:

"This invention relates to chairs which fold up into a small space, whereby they are rendered much more convenient for transportation and storage than chairs of ordinary construction, and consists in the peculiar arrangement and combination of parts, as hereinafter more fully described. In the accompanying sheet of drawing, figure 1 represents a side elevation of the chair, as when ready for use. Figure 2 shows the chair as folded up. Figure 3 is a backside elevation. Similar letters of reference indicate corresponding parts. A is the back, the sides of which extend to the floor and form the front legs, B B. C C are the back legs. D represents the seat, and A represents a brace in each side, which is pivoted to the front and back legs, as seen in the drawing. The seat is pivoted or jointed to the side pieces which form the back and front legs, as seen at *f*, and to the back or rear legs, as seen at *g*. These joints may be formed by short pivots or bolts, or by rods extending across from leg to leg of the chair, as may be deemed best. A suitable number of rounds, *h*, may connect the back legs, C, and also the front legs, B, together. * * * It will be seen that when the seat is raised the upper ends of the back legs (against which the back of the chair bears in supporting a weight on the chair) are thrown down, and the lower ends are thrown up, and the chair will fold together, as seen in figure 2, thus rendering the chair much more useful than ordinary chairs, as it may be laid away when not in use, and may be packed in boxes or in bundles, for transportation. * * * The ends of the back legs may be provided with pins, which shall enter holes in the back, where the bearing comes, as at *r*, should it be considered best to do so."

His claims are:

"(1) The seat, D, pivoted to the front leg, B, and at its rear, and to the back legs, C, whereby the several parts are adapted to be folded together as herein shown and described, for the purpose specified. (2) In combination with the above, the brace, E, arranged to operate substantially as described."

The defendant constructs and sells folding chairs made in accordance with the letters patent No. 221,062, granted to him October 28, 1879. It is alleged that chairs so made infringe claim 1 of the plaintiff's patent. It is plain that that claim relates to the pivoting together, in the manner shown, of the parts named in the claim, in such manner that the parts can fold together, and the chair become a folded chair. The parts named are the seat, D, the front legs, B, and the back legs, C. The side rail of the seat on each side is pivoted to the front leg at a point in such side rail intermediate between the front end and the rear end of such side rail, and at a point in such front leg intermediate between the top and the bottom of such front leg; and such side rail on each side is pivoted at its rear end to a point in the back leg near the upper end thereof. By raising such side rails towards the back of the chair, the upper ends of the back legs are

thrown down and the lower ends of such back legs are thrown up, and such side rails, the back, the front legs, and the back legs, are thus folded together. Corresponding parts are pivoted together, and will fold together in a like way, and by an identical mode of operation, in the defendant's chair. The piece, D, in the defendants' chair, which extends from the front cross round, J, at the forward end of that piece, to the upper part of the back leg, E, to which it is jointed by the working joint, M, corresponds to the side rail of the seat, D, in the plaintiffs' chair, which extends from the front cross-piece at the forward end of such side rail to the upper part of the back leg, C, to which it is jointed at $g$. In the defendant's, the piece, D, is, at a point in it intermediate between the front cross round, J, and the back leg, C, pivoted to the front leg, E, by the working joint, G, at a point intermediate between the top and the bottom of such front leg. In the plaintiffs', the side rail of the seat, D, is, at a point in it intermediate between the front cross piece at its forward end and the back leg, C, jointed to the front leg, B, at $f$, which is a point intermediate between the top and the bottom of such front leg. In the defendant's, when the pieces, D, are raised towards the back of the chair, the upper ends of the back legs, E, are thrown down, and the lower ends of such back legs are thrown up, and the pieces, D, the back, A, the front legs, C, and the back legs, E, are thus folded together.

The specification of the defendant's patent says that "the chair is folded by raising up the seat and pulling up the rockers." The raising up of the seat is effected by raising up the piece, D, towards the back of the chair. Raising up the piece, D, in the defendant's, and the side rail of the seat in the plaintiff's, effects the folding to an equal extent. It does not avoid infringement of claim 1 that the defendant changes the direction of the piece, D, so as to form a greater forward angle with the direction of the back leg, when the chair is fully unfolded, than the angle formed in like case by the side rail of the plaintiffs' seat, with the direction of his back leg, or that the place of sitting in the defendant's, instead of being at the same angle as the angle of the pieces, D, (as the plaintiffs' place of sitting is at the same angle as the side rails of his seat, D,) is made to be at a proper level or angle, by stretching a flexible seat from the front cross round, J, to the round I, which latter round is elevated above the jointing places, G and M. All the opinions as to non-infringement, expressed by witnesses for the defendant, are based on an erroneous view of the plaintiff's patent, and on the idea that because the plaintiffs' patent speaks of the seat, D, as pivoted, and its side rails are pivoted, and

the sitting part is in the plane with such side rails, and as the defendant's sitting part, N, is flexible and of carpet or leather, so as to fold, and as N is not pivoted to the back legs at all, and is connected only at its back end to the round, I, in the front leg, C, therefore the defendant has no seat pivoted as in claim 1 of the plaintiffs' patent. This view overlooks the identity of the piece, D, in the defendant's folding mechanism, with the side rail of the plaintiff's seat in his folding mechanism.

The plaintiff shows that the defendant has made and sold chairs constructed in accordance with the drawings of the defendant's patent. This is not denied by the defendant. Claim 1 of the plaintiffs' patent does not cover the entirety of either claim of the defendant's patent; and to make a structure in accordance with the description and drawings of the defendant's patent infringes claim 1 of the plaintiffs' patent. Either claim in the defendant's patent may be valid as a whole, and yet there may be no right to make the whole structure shown in its drawings without a license under the plaintiffs' patent.

Vaill's patent, No. 38,132, of April 7, 1863, does not; nor does Exhibit No. 3, purporting to represent it; nor does Exhibit No. 4, purporting to represent Crain's patent, No. 13,479, of August 21, 1855; nor does that patent; nor does any other prior patent referred to,—show what is found in claim 1 of the plaintiffs' patent, and in the defendant's structure, in the view above set forth.

The plaintiffs make no claim that model No. 1, presented by the defendant, infringes their patent.

The general assertion of the defendant and others that folding chairs, like those described in the plaintiffs' patent, were known and used before the invention of the Collignons was made, is not supported by a particle of evidence. No prior article is shown or described. The plaintiff C. O. Collignon shows that he and the other joint inventor, his brother, who died in June, 1880, or he and his said brother's executors, have always owned the patent; that they have been, since 1869, making chairs with the improvements covered by it, and have never been interfered with except by the defendant; that their business in such chairs is to the extent of about $30,000 worth per year; that they have two licensees who pay them royalties; that the licensees complain of the defendant's infringement, and the license fees are endangered thereby; that he, C. O. Collignon, first learned of the defendant's infringement in 1878, and promptly notified him to cease infringing, and has repeated such notice three times since; that soon after the first notice his brother became seriously ill and

disabled from business, and that up to his death, and since, he has had the entire care of their business, and in great part of his estate, and it was impossible for him to give the time and pains necessary for proceedings against the defendant. It is shown that the plaintiffs retained counsel in the early part of 1880, and sued the defendant on the patent, in New York city, in July, 1880, and moved for an injunction against him in November, 1880, but the suit was withdrawn because of a technical defect. The bill in this suit was filed in September, 1880, and the subpœna was served December 6, 1880. This motion was noticed for March 15, 1881, having been delayed because of business engagements of the plaintiffs' counsel. The foregoing facts are not contested.

The defendant shows that he began making chairs, such as his patent describes, in September, 1878, and applied for his patent June 21, 1879; that in September, 1879, he completed a building for the business, costing, with the land and the proper machinery, $12,000, and employs about 50 men at Cortland Village, New York, and that he is worth $25,000. What the defendant so did in respect to his new building was done after notice from the plaintiffs. Mere forbearance to sue, under the circumstances stated, after the notice given, cannot, in the absence of any affirmative encouragement to the defendant, be held to affect the plaintiffs' right to a preliminary injunction, in such a plain case as this is.

The plaintiffs show a case of acquiescence by the public sufficient to sustain a preliminary injunction. The defendant states generally that chairs claimed to infringe the plaintiffs' patent have been made, sold, and used in hostility to their right, "and, among others, by the Eureka Manufacturing Company, of Sterling, Illinois, who have made, sold, and advertised the said chair extensively without let or hindrance from the complainants." No chair made or sold or advertised by the company named is produced; no advertisement is produced; what kind of chair is the one referred to, or what is meant by "the said chair," is not shown; there is no specific affidavit from which the court can see that the conclusion drawn is correct; and the statement is a statement of only a conclusion, and not of a fact which can be judicially considered. The other affidavits are even more general.

The case is a clear one, and one of irreparable damage to the plaintiffs, and not one where there would be as much probability of doing irreparable mischief as of preventing it by granting the injunction. The motion is granted.